ALLEN M. SMALL *vs.* DANIEL H. CLARK.

Waldo. Opinion February 10, 1903.

*Forcible Entry and Detainer. Lease. Forfeiture. Eviction. Damages.*
*R. S., c. 17, § 3; c. 94, §§ 1, 8, 9.*

1. If the forfeiture of a lease by using the premises for the unlawful sale or keeping of intoxicating liquors, as provided by R. S., c. 17, § 3, be not taken advantage of by the lessor, the lessee's continued occupation is lawful, and the subsequent grantee of the lessor cannot maintain forcible entry and detainer based upon such forfeiture.

2. It is the owner of the premises at the time of the forfeiture who may bring forcible entry and detainer, and he alone.

3. Such a lease will remain in force, until he who is owner at the time of forfeiture determines the right of possession, by entry, or notice, or suit within seven days under R. S., c. 94, § 1.

4. The word "forfeited" in R. S., c. 17, § 3, has the same meaning and effect which the common law gives the same word in leases. Hence, if a a lessee "forfeits" his lease under R. S., c. 17, § 3, the lease is not ipso facto absolutely void, but is voidable at the option of the lessor or owner.

5. When a lease for a term of years provides that "if either party should see fit to terminate this lease before it expires he shall pay the other fifty dollars," *held;* that either party has a right to terminate the lease by paying fifty dollars to the other.

6. *Held;* that the evidence in this case fails to show that the lease in question was so terminated.

7. *Also;* that the lessor after he had conveyed the premises had no power to terminate the lease, unless he in some way still had an interest in the lease; or acted by authority of the owner, of neither of which facts is there any proof.

8. The plaintiff obtained judgment in the lower tribunal against the defendant, and the defendant having recognized to the plaintiff as provided in R. S., c. 94, § 8, the plaintiff recognized to the defendant as provided in section 9 of the same chapter, whereupon a writ of possession was issued and the defendant was removed from the premises. Subsequently the buildings which were the subject of the lease were destroyed by fire. *Held;* that a writ of restoration ought not to issue.

9. *Held;* that the defendant is entitled to recover as damages for his unwarrantable eviction the difference between the rental value of the premises and the rent reserved, from the date of the eviction to the end of the term, or to the termination of the lease otherwise.

On report. Judgment for defendant. Damages for defendant to be assessed according to the opinion. Forcible entry and detainer before a Trial Justice in Waldo County, for the purpose of obtaining possession of a hotel called the Lake House, in Freedom, in that county.

The Trial Justice found for the plaintiff, issued a writ of possession upon which the defendant was ejected from the premises. From the proceedings of the Trial Justice the defendant appealed to this court sitting at nisi prius and, after the testimony before the jury had been taken out, the case was by agreement of the parties reported to this court.

The facts are stated in the opinion.

*R. F. Dunton,* for plaintiff.

As late as June 14, 1901, the defendant used the premises for the illegal sale and keeping of intoxicating liquors, contrary to the pro-

visions of R. S., c. 27, § 1. .He thereby forfeited all his right to the premises; his lease became absolutely void, and can afford him no defense to this action.   R. S., c. 27, § 3.

Such use annuls and makes void the lease, and without any act of the owner, causes the right of possession to revert and vest in him. *Prescott* v. *Kyle,* 103 Mass. 381.

The statute of 1858, c. 45, § 3, was not enacted for the benefit of the owner of the property, but that part of it applicable to this case was enacted as a part of the settled policy of the State to outlaw the liquor traffic.   The forfeiture is in the nature of a penalty for the violation of law, and to hold that it may be waived by the owner so that it cannot be invoked to invalidate the lease, or affect the tenant's rights to the premises, is equivalent to holding that an individual may waive the penalty for violation of a criminal law.

The rights of the defendant are no better under a lease of premises which he actually took and used for the illegal sale and keeping of intoxicating liquors in violation of both the terms of his lease and the law, than they would be under a lease which in terms permitted him to keep and sell intoxicating liquor on the premises.

When a lease is terminated under its own provisions, no notice to quit will be necessary, in order to dissolve the relation of landlord and tenant; for both parties are apprised of their rights and duties, the lease terminates ex vi termini pursuant to the contract, and the lessor may at once enter upon the lessee, and resume the possession of his premises, while the latter becomes a wrongdoer if he withholds such possession.   Taylor's Landlord and Tenant, § 465.

*C. E. and A. S. Littlefield,* for defendant.

SITTING : WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, SPEAR, JJ.

SAVAGE, J.   Action of forcible entry and detainer.   April 3, 1901, J. I. Watts, then the owner of the premises in question, leased them to the defendant for the term of four years at a rental of $130 a year.   The lease contained the following stipulations, among others:   "Be it understood and agreed that if either party

should see fit to terminate this lease before it expires he shall pay the other fifty dollars and the said Clark shall have the first refusal when sold"; also, "be it further understood that said house shall not be used for any other purpose than a hotel, and no intoxicating liquors shall be sold on the premises." The other provisions in the lease are unimportant here. Watts conveyed the premises to the plaintiff July 8, 1901. On July 10, 1901, the plaintiff gave notice to the defendant in writing that his tenancy in the premises would terminate August 10, 1901. This action was commenced August 19 following, was heard before a trial justice, and judgment was rendered for the plaintiff. The defendant appealed to the Supreme Judicial Court, and the case is now before us on report.

The plaintiff seeks to maintain this action, notwithstanding the defendant was occupying the premises under a lease for a term of years, upon two grounds.

I. He contends that the defendant's right to the premises as tenant or occupant had been forfeited by him, prior to the commencement of the action, by using it or a part of it as a liquor nuisance, contrary to the provisions of R. S., c. 17, § 1. The lease itself stipulated that no intoxicating liquors should be sold on the premises, and that the lessor might enter and expel the lessee if he should violate any of the covenants of the lease. Revised Statutes, ch. 17, § 3, provides that "if any tenant or occupant, under any lawful title, of any building or tenement not owned by him, uses it or any part thereof for any purpose named in section one, he forfeits his right thereto, and the owner may make immediate entry, without process of law, or may avail himself of the remedy provided in chapter ninety-four," which is forcible entry and detainer.

Waiving the questions whether the plaintiff's pleadings should not have set forth specifically the statutory ground on which his claim is based, and whether proof of forfeiture under the statute is not a fatal variance from the allegations in the declaration before us, *Eveleth* v. *Gill*, post, p. 315, we are of opinion that the plaintiff must fail upon this statutory ground for want of proof. The only evidence in the case having any tendency to prove that the defendant

used any part of the premises as a liquor nuisance relates to June 14, 1901, while Watts was still the owner, and twenty-five days before the plaintiff purchased the hotel. After that, and while Watts continued to own the premises, the latter did no act to terminate the tenancy, either under the provisions of the lease or under the statute.

The remedy by forcible entry and detainer given by the statute may be maintained, without notice, if commenced within seven days from the forfeiture of the term. R. S., c. 94, § 1. But the plaintiff does not seek to maintain the action under that clause. The only other provisions in chapter ninety-four which can by any construction of its terms afford a lessor a remedy in cases of this sort is that which relates to tenants at will, and of these we shall speak hereafter.

Assuming that the defendant forfeited the lease as claimed, while Watts was the owner, unless he became ipso facto a mere tenant at will, Watts alone could take advantage of the forfeiture, and his right would not pass to his grantee by conveyance of the premises. *Fenn* v. *Smart*, 12 East, 444; *Bennett* v. *Herring*, 3 C. B. (N. S.) 370; *Trask* v. *Wheeler*, 7 Allen, 109; *Rice* v. *Stone*, 1 Allen, 566. The statute says, the tenant "forfeits his right thereto." The more explicit language of the original act, Stat. 1858, c. 54, § 3, says, "such use shall annul and make void the lease or other title under which said occupant holds, and without any act of the owner shall cause to revert and vest in him the right of possession thereof." The earlier phrase means no more, we think, than the later one. In either case it is the "owner" who may make immediate entry,—entry immediately upon the forfeiture, that is, when the forfeiture becomes effective; it is the "owner" at the time of the forfeiture, not his subsequent grantee. It is the "owner" who may make immediate entry or may have the alternative remedy of forcible entry and detainer. The statute does not read that the "owner" may make immediate entry or his grantee may resort to forcible entry and detainer. It is the owner at the time of forfeiture all the way through. This appears to be so from the language of the statute. Extraneous considerations support this position. The statute we are discussing was enacted in pari materia with that other which makes the lessors of buildings used

as liquor nuisances liable under some conditions to indictment, fine and imprisonment. And one purpose of section three undoubtedly was to enable the landlord to dispossess his liquor-dealing tenant immediately upon discovery, and thereby avoid the risk of prosecution himself. *Way* v. *Reed,* 6 Allen, 364. And this reason would not apply to a subsequent grantee.

Moreover, although the lease is forfeited or annulled and made void by the act of the tenant, the owner is not compelled to take advantage of it. He is not compelled to act. He is not obliged to make immediate entry. He may never resort to the remedy by forcible entry and detainer. He may waive the forfeiture, and waive the privilege of ousting the tenant. He may be content that the tenant shall remain, and if he is content, no one else can complain. And if he permits the tenant to remain, the tenant's occupation is lawful. The tenant's occupation is at no time unlawful, unless and until the " owner" determines the right of occupation.

At this point it becomes necessary to examine with more particularity into the precise status of the lease after forfeiture. Thus far we have assumed that it remains in force until the owner, during his ownership, takes advantage of the forfeiture, and determines the right of possession. We have said that the owner may waive the forfeiture. But the statute says the right under the lease is forfeited. The old statute said that it is annulled and made void. Is the statute to be construed as making the lease absolutely void and of no effect whatever, whether the owner takes advantage of it or not? If so, it may follow that if the tenant remains after the forfeiture, with consent express or implied of the landlord, he remains as tenant at will, and that forcible entry and detainer will lie, after thirty days' notice, such as was given in this case. And if the tenancy becomes thus a tenancy at will, by force of the statute forfeiture, and the lease is no longer in effect, then of course the grantee of the landlord, finding a tenant at will in occupation of the premises, may elect to regard the tenancy as terminated by the alienation, and bring forcible entry and detainer without giving the thirty days' notice, *Seavey* v. *Cloudman,* 90 Maine, 536; or he may give the notice and then bring his action. The plaintiff in this case seems to

have proceeded upon the theory that the defendant was a tenant at will merely, at the time of the alienation, and he gave the statutory notice.

If this construction of the statute is the correct one, what will be some of the consequences? The first and foremost one, and the only one we need to notice, will be to deprive the statute of much of its apparent beneficial effect, so much so that the court may well pause and inquire whether the Legislature intended such an effect. Unless the forfeiture becomes effective only by some act of the lessor taking advantage of it, such as entry, or notice, or suit within seven days, under chapter ninety-four, it must become effective by some act of the tenant, and that act must be the act causing forfeiture. If that be so, the lease is forfeited and the rights under it are ended by the act of forfeiture. The only summary remedy of the landlord, however, the only remedy which involves no notice and no delay, is forcible entry commenced within seven days after the forfeiture. But it is safe to say that innocent landlords, for whose benefit, in part at least, the statute was enacted, ordinarily do not and cannot know within seven days that forfeiture has been incurred. They are, therefore, remitted to a slower and waiting process. If not able to bring action within seven days after forfeiture, they must give thirty days' notice before suit, unless the forfeiting tenant can be regarded as a disseizor, and we think he cannot be so regarded merely because of the forfeiture. This construction certainly robs the statute of much of its supposed efficacy.

The inquiry suggests itself in this connection, whether the Legislature did not intend to give to the word " forfeited " and the phrase " make void " the same meaning and effect which the common law gives to similar expressions in leases. We think such was the intent. " The modern decisions," says Mr. Taylor in work on Landlord and Tenant, § 492, " establish that the effect of a condition, making a lease void upon a certain event, is to make it void at the option of the lessor only, in cases where the condition is intended for his benefit, and he actually avails himself of his privilege." The editor of the Am. & Eng. Ency. of Law lays down the doctrine, Book 18, p. 380, 2d ed., which seems to be supported by the authorities cited,

that the construction of provisions for forfeiture of a lease for non-performance by the lessee, of conditions, is that the lease is voidable only at the election of the lessor, and is not rendered absolutely void though it provides that it shall be null and void in case of such breach. And this rule applies to leases by the crown, and when the provision is by statute, p. 381.

That such a construction is the one properly to be given to a statute like the one under consideration has been decided by the courts of other states in well considered opinions. In Rhode Island a statute phrased in almost the identical language used in our Act of 1858 was under consideration. The court said : "We think that under Gen. Stat. R. I., chap. 73, § 4," the statute in question, "a mere use of leasehold premises for the purposes prohibited in section 1 " (like R. S., c. 17, § 1) "does not, ipso facto render the lease absolutely void, but that sect. 4 was intended for the benefit of the · lessor, and that he alone can take advantage of the avoidance, at least unless he has been cognizant of the illegal use and has consented to it." *Almy* v. *Greene,* 13 R. I. 350. The case of *Trask* v. *Wheeler,* 7 Allen, 109, is on all fours with the one at bar. In it the lessor had conveyed the premises after forfeiture had been incurred, under a statute like our R. S., c. 17, § 3, and the grantee sought to take advantage of the forfeiture in his action to recover possession. The court said: "If it were to be held that the lease is thus made void, against the will of the landlord, any tenant desiring to get rid of his lease might do so simply by violating the statute. The provision must be regarded as made for the benefit of the landlord, who may avail himself of it, but is not obliged to do so. Though the lease is declared void, yet it belongs to the class of things which are said to be void only as to some persons. Bac. Ab. Void and Voidable, B. The landlord had a right to treat it as void, and to enter and expel his tenant. But he might also refrain from this exercise of his rights, and so long as he did so refrain, the lease would continue to be valid against the tenant, and all other persons; and it would continue valid till he should do some act to avoid it."

We are entirely satisfied with this exposition of the law. We think it is the only reasonable and proper interpretation of the statute. It

follows that the lease was in force at the time of the sale to the plaintiff and he could not oust the defendant for a forfeiture under R. S., c. 17, § 3, which occurred before he became owner, and of which the former owner had taken no advantage. The same result would follow were we to consider the provision in the lease concerning the sale of intoxicating liquors. The lessor might have had the right to enter and expel the lessee, and terminate the tenancy, but he did not do so.

II. The plaintiff also contends that the lease was terminated by the parties to it under that clause which stipulated that "if either party should see fit to terminate this lease before it expires he shall pay the other fifty dollars." It is not denied that by a proper construction of this clause, either party had a right to work a termination of the lease by paying fifty dollars to the other. The only question is whether the lease was so terminated. And here also the plaintiff fails in proof. Watts, the lessor, testified that he paid the defendant fifty dollars for the purpose of terminating the lease. This is now denied. It is true the defendant was not asked to testify upon this point. But we think that he might be well content to stand upon the evidence put in by the plaintiff. A careful examination of the evidence leads us to conclude that whatever payment Watts made to the defendant was made August 22, three days after this suit was commenced, when Watts and the defendant settled their mutual accounts, and that it is highly improbable, notwithstanding the testimony of Watts, that any payment was then made to terminate the lease. If the payment was made August 22, though in other respects made as claimed by the plaintiff, it would not support an action brought August 19. But however this may have been, Watts then was not the owner of the premises, and so far as appears had no interest in the lease. Unless he had such interest, or unless he was acting for the owner, of which there is no proof, he no longer had authority to terminate the lease by payment. He could not, by his acts, control or affect the lease. It should be said also that we do not think the evidence shows that the defendant assented to any termination of the lease.

The defendant therefore is entitled to judgment. That being so

it is agreed by the parties that the law court shall assess the damages, and determine whether justice requires a writ of restoration to issue.    The case shows that after the trial justice had rendered judgment for the plaintiff, and the defendant had appealed and recognized to the plaintiff as provided in R. S., c. 94, § 8, the plaintiff recognized to the defendant as provided in section 9 of the same chapter. Thereupon the trial justice issued a writ of possession, which was executed, and the defendant and his property by means of the writ removed from the premises August 27, 1901.    It also appears that subsequently, in August, 1902, the hotel which was the subject of the lease was destroyed by fire.    It is clear, therefore, that justice does not require a writ of restoration to issue, but the contrary.

In assessing damages for the unwarrantable eviction of the defendant, it must be considered that his legal rights under the lease now exist in full force, and will continue for the full term of the lease or until April 3, 1905, unless sooner terminated in accordance with the provisions of the lease.    The court may suppose that the plaintiff, upon being advised of his liability, will avail himself of his contract right to terminate the lease by the payment of fifty dollars, but we cannot know judicially that he will do so.    The damages, therefore, should be assessed in the alternative.

The measure of damages is what the use of the premises may be deemed reasonably worth from the date of eviction to the end of the term, or to the termination of the lease otherwise.    The ordinary rule is to allow the difference between the rental value of the premises for the term and the rent reserved.    3 Sedgwick on Damages, §§ 944, 1022.    The burden is upon the defendant.    He can recover no more damages than he has proved.    In this case, for want of data, it is difficult to estimate what was the reasonable worth of the legitimate use of the premises.

The defendant, perhaps to his disadvantage now, kept no books of account.    He relies upon estimates chiefly.    Into these estimates have crept, we think, some elements not proper for consideration, such as the income he received for carrying the mail, under an independent contract, and his own personal labor and the labor of others in his family, which belonged to him, and it may be other matters.    It

is to be presumed that he still has the benefit of his own labor, and that of his family, so far as it belongs to him.

Taking into account all the considerations which arise in the case, the court is of opinion that the defendant is entitled to recover damages at the rate of twenty dollars a month.

No allowance is to be made on account of the burning of the hotel. Non constat that it would have burned if the defendant had been allowed to retain possession. The plaintiff took the responsibility of ousting the defendant. He took the possession of the property into his own hands, and he must now be held accountable for the use of it as it was when he took it.

> *Judgment for defendant. No writ of restoration to issue. If the plaintiff shall, within thirty days after rescript is filed, terminate the defendant's tenancy by paying fifty dollars to the clerk for the use of the defendant for that purpose, defendant's damages are assessed at twenty dollars a month from August 27, 1901, to the time the tenancy is so terminated; otherwise defendant's damages are assessed at twenty dollars a month from August 27, 1901, to April 3, 1905. Judgment and execution accordingly.*