24 N.J. Super. 322 (1953)
94 A.2d 508
FRITZ PLASSMEYER AND FLORENCE C. PLASSMEYER, PLAINTIFFS-RESPONDENTS,
v.
ADOLPH BRENTA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 1952.
Decided January 26, 1953.
*324 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. Frank S. Katzenbach, III, argued the cause for defendant-appellant (Messrs. Katzenbach & Salvatore, attorneys).
Plaintiffs-respondents did not file brief.
The opinion of the court was delivered by FRANCIS, J.C.C. (temporarily assigned).
In this action appellant, Adolph Brenta, is in possession of the premises in question. His possession arose from the assignment of a lease entered into between his assignor and the predecessors in title of respondents, Fritz Plassmeyer and Florence C. Plassmeyer. The Plassmeyers sought possession alleging a breach of the lease, and the jury found in their favor; Brenta now appeals.
The proof discloses that on May 1, 1944 the premises were leased in writing by the former owners, Sara S. Lowenstein and Carol L. Davis, to Terminal Stations, Inc. On October 24, 1945 Terminal, Inc. assigned to Brenta who thereafter paid the rent regularly to the lessors.
The lease was for a term of 20 years, to expire on April 30, 1964. It provided that the premises were to "be used and occupied only and for no other purpose than as a gasoline service station." Rent was fixed at $125 monthly for the first ten years of the term and at $150 monthly for the last ten years. Then the agreement granted a reduction to $75 per month from May 1, 1944 until April 30, 1946, with the qualification that if the war ended, or if the then existing restriction on the use of gasoline was terminated prior to the latter date, the reduction would cease. As additional rent the lessee agreed to pay one cent per gallon for each gallon of gasoline delivered into the storage tanks on the premises in excess of a certain gallonage.
The agreement also provided that in the event of default in the performance of any of the covenants, at any time *325 thereafter the lessors had the election to terminate the lease upon giving five days' notice of their intention to do so.
Neither the original lessee nor appellant ever used the premises as a gasoline service station. The contention advanced in the trial court was that the stipulation in the lease with respect to such use was merely a covenant not to put the property to any other use, but that no positive obligation was imposed to operate a service station. It was asserted that so long as the tenant paid the monthly rent and did not engage in any other occupation on the premises, no breach of the lease arose.
The trial court concluded that the language of the lease was clear and unambiguous and plainly created a duty to operate a gasoline service station. Our study of the instrument convinces us that this interpretation was correct. The language employed, particularly that dealing with the rental obligation, was prohibitive and mandatory with respect to use, and not merely restrictive, as in the cases on which appellant relies, namely, Burns & Schaffer Amusement Co. v. Conover, 111 N.J.L. 257 (E. & A. 1933); Hoffman v. Seidman, 101 N.J.L. 106 (E. & A. 1925); McCormick v. Stephany, 57 N.J. Eq. 257 (Ch. 1898). Consequently failure to engage in that use constituted a breach.
However, such conclusion does not dispose of the problem. It appears, without dispute, that throughout the period from the inception of the lease down to the payment of the last monthly rent on August 1, 1950, the lessors were aware of the violation; yet they accepted the fixed minimum rent for this period of over six years, and never exercised their election to terminate.
On occasions the attorney for the lessors spoke to Brenta about using the demised premises for a gasoline station, but there was never any insistence upon it. It appears also that during the years negotiations were carried on with various persons for the sale of the fee of the premises.
Among the prospective purchasers was the Trenton Oil Co., a gasoline distributing company, whose owners were Anthony *326 Conte and Anthony Gambino, the latter being a nephew of Brenta. In 1947 these two men, who seemed to have some business relationship with Brenta, were asked by the owners' attorney if they were "ever going to erect a station." At this time another lease was drawn up for a longer period of time and requiring the erection of a station. However, a new agreement was not consummated and the attorney said that he again asked them to use the property as a gasoline station.
In the spring of 1950 negotiations were renewed on behalf of the owners with the Trenton Oil Co. and a contract of sale was prepared. But again for some reason the transaction was not completed. In fact, as late as May 20, 1950 the attorneys for the parties were corresponding about particular provisions to be included in the agreement.
The evidence shows also that in 1948 and again in the fall of 1949 the respondent Fritz Plassmeyer made overtures toward the purchase of the property. He wished to operate a diner there and on at least one occasion suggested to Conte that they make the purchase together, in which event he would install a diner and Conte's interests could run a gas station. Again the sale did not materialize, apparently because the price was too high.
In July 1950 the real estate broker who had originally brought the matter to the attention of Plassmeyer having died, his brother, Paul Plumeri, again communicated with Plassmeyer. At this time a price of $40,000 was given, which included the purchase of both fee and leasehold. Then, in August, Plassmeyer told Plumeri that he had bought the property through another brokerage firm for $25,000.
The Plassmeyers took title on August 31, 1950. Brenta's rent for the premises had been paid down to that date. On the same day Plassmeyer caused a written notice of termination of the lease as of September 10, 1950 to be served upon Brenta. According to the notice the termination was based upon the ground that the premises "have been vacated for some time."
*327 There is a clause in the lease condemning desertion or vacation and making it ground for termination. The lessors' theory, as set out in the pretrial order, seems to have been that the failure to operate a gasoline station constituted a vacation of the demised premises. In any event, the case was tried by the parties and submitted to the jury on the issue, of whether or not there had been a breach of the use condition and a waiver of that breach.
When the Plassmeyers acquired title there was an old frame structure in a poor state of repair on the premises; there were no gasoline pumps. Upon receipt of the notice, appellant repaired and painted the building and applied for a municipal license to install two gasoline pumps. The license was granted on October 9, 1950. Prior to the institution of this suit a new gasoline tank had been delivered to the premises and the excavation had been made to receive it.
Rent for the month of September was tendered to the Plassmeyers and refused by them. On October 21, 1950 this action for possession was instituted.
In his charge the trial court instructed the jury that the defendant was duty bound to conduct a gas station and that it was for them to say whether a substantial breach of that contractual obligation had occurred. This statement was more favorable to the defendant than was required, because it was undisputed that the defendant had never operated such a station and consequently the breach was clear.
Then the issue of waiver of the breach was given to the jury for determination. Among other things the court said:
"* * * that is to say, if you should find as a fact that Mrs. Lowenstein on a pretty continuous basis received this rent and dealt with these tenants on a basis of acquiescence, of what they were doing, or failing to do as her tenant, she being the title owner until the end of August, 1950, then you would find as a fact whether that conduct did or did not constitute a waiver of any default that they were or had been making under that lease. If this were such a waiver, then, of course, this present plaintiff, because he inherits or has no *328 rights higher than the rights which the Lowenstein interests had in this situation, would not be able to take advantage and to terminate or enforce a termination of this lease, because of something that had been done long previous and which had been waived in law by the then owner of the title to the property, the Lowenstein interests."
It is thus apparent that the court left it to the jury to decide whether there had been a breach of the lease prior to August 31, 1950 and, if so, whether such breach had been waived by the Plassmeyers' predecessor in title. And they were told that if they found both the breach by the lessee and the waiver by the original lessors, their verdict should be for the lessee.
The jury verdict for the Plassmeyers means that a breach of the lease was found and further that there was no waiver thereof.
There can be no doubt that if Mrs. Lowenstein and Mrs. Davis had waived the breach of the lease, the Plassmeyers would take the property subject to such legal obligations as arose by reason of that waiver.
What, then, was the situation with respect to the original lessors? Admittedly for over six years they accepted rent when they were chargeable with knowledge that a gasoline station was not being operated. Such conduct clearly constitutes a waiver as a matter of law. The fact that they demurred mildly on a few occasions, through their attorney, would not alter the legal consequences of their inaction.
In North v. Jersey Knitting Mills, 98 N.J.L. 157 (E. & A. 1922), it appeared that a lease contained a covenant against subletting. The lessee assigned and the landlord, with knowledge of the assignment, accepted rent from the assignee. Under the circumstances the breach of the lease was adjudged waived, the court saying:
"We think that the plaintiff could not recover by virtue of the breach of covenant by the assignment to the Royal Knitting Mills. Mr. North seems to have known of this assignment, and with that knowledge he received checks for the monthly rent or accepted payments made on account of the monthly rent to his bank and to his credit."
*329 See also: Matlack v. Arend, 2 N.J. Super. 319, 326 (Ch. Div. 1949); Orange Motors, Inc. v. Meyer, 107 N.J. Eq. 461 (E. & A. 1930); Lincoln Furniture Co. v. Bornstein, 100 N.J. Eq. 78, 83 (Ch. 1926), affirmed 101 N.J. Eq. 774 (E. & A. 1927); Woollard v. Schaffer Stores Co., 272 N.Y. 304, 5 N.E.2d 829, 109 A.L.R. 1262 (Ct. App. 1936); 32 Am. Jur., Landlord and Tenant, sec. 883; 1 American Law of Property, p. 395.
The applicable principle is broadly stated in 109 A.L.R. 1267, as follows:
"It is a generally accepted principle of law that any act done by a landlord, knowing of a cause of or right of forfeiture, which affirms the existence of the lease and recognizes the lessee as his tenant, is a waiver of the right to declare or enforce the forfeiture."
A Pennsylvania case is quite analogous factually. In Cleveland v. Salwen, 292 Pa. 427, 141 A. 155 (Sup. Ct. 1928), a lease required that if the lessee cut doors into adjoining buildings, he should post a bond conditioned upon restoring the premises to their original condition. The lessee constructed such doors but failed to post the bond. However, the landlord accepted the rent knowing of the breach. The court said:
"The right to declare a forfeiture is reserved in this lease, and yet during the entire term of 5 years, with lessees in constant possession, and with full knowledge of the fact that the doorway had been cut between the stores and that no bond was forthcoming, lessors at no time made any practical attempt, or gave notice of intention, to exercise the right of forfeiture.

* * * * * * * *
The extent of the extreme and continued indifference of the owners of the property with respect to the bond is shown by the testimony of one of lessors, who was the usual recipient of the rent, who, when asked whether demand had ever been made for the bond, replied:
`When it came to my mind I would drop in, or when the rent was due I might drop in for the check, and would then mention the matter.'
Beyond this placid and careless interest in the obligation, lessors at no time mentioned the matter; accordingly, it would seem the inevitable result was to encourage the tenants in the belief that their landlords did not intend to insist upon a strict compliance with the covenant. Since their dereliction in that respect was of such small consequence to lessors, and inasmuch as there was not forthcoming *330 more than mere amiable reminders of the matter, what further, short of a direct waiver by appellants of the requirement of the bond, could have been done to induce the tenants to treat the matter with the same constant indifference? Lessors themselves thus encouraged the default, and they should not be allowed to take advantage of it."
Appellant's answer to the complaint did not plead waiver as required by Rule 3:8-3, nor was it set out in the pretrial order. Nevertheless, the defense was fully presented at the trial without objection. No motion for judgment was made on the ground of waiver but, as already indicated, the issue was submitted to the jury for determination.
Now it is argued that the verdict of the jury on the issue of waiver was contrary to the weight of the evidence. In view of the state of the record that question is properly before us.
Examination of the proof convinces us that the determination of absence of waiver is opposed to the weight of the evidence. Since the matter was submitted to the jury on the theory that if a waiver by the original lessors was found, such waiver would bar the new owners' action, it follows that the judgment must be set aside.
As we have said, the waiver resulted from acceptance of the monthly rent with knowledge of the right to terminate the lease. The last payment of rent before the transfer of title to respondents was for the month of August 1950. Thus, all past known breaches prior to that time were waived. But it does not follow that such waiver exscinds from the lease for all time the covenant to operate a gas station. Since the covenant represents a continuing obligation, acceptance of the rent accomplished a relinquishment of past, but not future, breaches. 109 A.L.R. 1277.
Not only is this the law, but it is the specific agreement of the parties as well. Paragraph 11 of the lease provides that the failure of the landlord to exercise his option to declare a forfeiture in one or more instances shall not be construed as a relinquishment of the conditions for the future.
*331 Thus, when the rent for August 1950 was paid the slate was wiped clean of breaches and once again the lessors' election to declare a forfeiture in the event of violation of the lease was in full force. What, then, was the situation when during the month of August Brenta again violated the condition? Obviously he was entitled to possession for the full month, but subject to performance of the stipulated covenants.
The same condition of non-performance of the covenant with respect to use continued through the month of August. However, the lessors were again quiescent, taking no steps whatever toward forfeiture.
Title to the premises passed to the Plassmeyers on August 31, 1950. On that very day they served the ten-day termination notice. By its language they sought to take advantage of past breaches of the lease and to predicate a forfeiture upon them. But this cannot be done. A subsequent grantee cannot enforce a forfeiture for breaches of conditions of a lease which were waived or not taken advantage of by his predecessor in title, who had knowledge thereof.
The general rule seems to be that where a cause of forfeiture of a lease was in existence at the time of the transfer of the reversion, and the lessor, with knowledge of such cause, had done no act to indicate his purpose of avoiding the lease by reason of the breach, the grantee cannot enforce the forfeiture. 32 Am. Jur., Landlord and Tenant, sec. 873.
In Small v. Clark, 97 Me. 304, 54 A. 758, 761 (Sup. Jud. Ct. 1903), the court declared:
"It follows that the lease was in force at the time of the sale to the plaintiff, and he could not oust the defendant for a forfeiture under Rev. St. c. 17, § 3, which occurred before he became owner, and of which the former owner had taken no advantage."
See also: Godwin v. Harris, 71 Neb. 59, 98 N.W. 439 (Sup. Ct. 1904); Moulton v. Lawson, 79 Neb. 720, 113 N.W. 244 *332 (Sup. Ct. 1907); Beech Fork Coal Co. v. Pocahontas Corp., 109 W. Va. 39, 152 S.E. 785, 788 (Sup. Ct. App. 1930).
From a procedural standpoint the posture of the case is unusual. We have already found that the verdict of the jury on the issue of waiver, as that issue was submitted to them, is against the weight of the evidence. Normally this would require a new trial. However, in this instance because it is apparent that as a matter of law respondents cannot take advantage of the breach which occurred prior to their ownership, a new trial would at best be a formality. Therefore, the judgment is reversed and the action is remanded with instructions to enter a judgment for the appellant Brenta.