68 U.S. 61
 17 L.Ed. 680
 1 Wall. 61
 DERMOTT
v.
WALLACH.
 December Term, 1863
 
 MRS. DERMOTT leased to Dexter a hotel, for three years from 1st October, 1855, to be extended to five, at the option of the tenant. The rent was $3000 a year, payable in monthly sums of $250. It was expressly stipulated between the parties, and made a condition, that if the tenant should assign or underlet the premises without the written consent of the landlord, or should remove or attempt to remove any of his goods or chattels (except the same be replaced of equal value) from the premises without a like consent, then, and in either case and event, at the 'sole option and election' of the landlord, the term should cease, and the landlord might immediately re-enter upon the premises and expel the tenant, AND MOREOVER, in either of said cases, or the happening of the events, 'one whole year's rent, to wit, the rent of $3000 over and above all such rents (that is to say, all such of the rents hereinbefore reserved to be paid on the first day of each month during the said term . . . as shall have then already accrued) shall be and by these presents is reserved to be paid by the said Dexter to the said Dermott, and shall immediately thereupon accrue and become due and owing from him to her, and shall and may be levied by distress and sale of all such goods and chattels as may be found on the premises.'
 Dexter the tenant took possession, and afterwards executed two deeds of trust of the goods and chattels in the hotel to the defendant, Wallach, to secure certain promissory notes. One of the notes not being paid at maturity, Wallach advertised the goods and chattels for sale, and was proceeding with the sale when Mrs. Dermott levied a distress upon them for $3000. This was on the 18th of May, 1857, about a year and five months before the lease would expire. The ordinary rent had been all punctually paid to the 1st of May, the month in which the distress was made; so that no rent of the ordinary kind was due at the time of the distress. Wallach having replevied the goods seized, the defendant avowed; setting up, by way of justification for the taking, the attempt to remove them from the premises, and alleging that by such removal one year's rent had accrued. There were two pleas to the avowry. I. No rent in arrear. II. No demand for the rent.
 The substantial question was whether this $3000 was 'rent,' or was a penalty, that is to say, whether the clause meant that in the event of a removal, or attempted removal, Mrs. Dermott might get a year's rent in advance, or whether it meant that she should have a sum of money equivalent to a year's rent 'over and above' all rents, by way of penalty.
 The Circuit Court for the District of Columbia, in which the case arose, gave judgment for the plaintiff. On error here, the question was the same as below and as already stated.
 
 Messrs. Carlisle and Cox for the trustee, the defendant in error:
 
 1. The authorities show that whenever it is doubtful what the intent of the parties was, or where there may be breaches of the agreement of different degrees of importance, and a gross sum is payable for any breach, however unimportant, or where the damage is capable of being certainly known, the sum will be treated as a penalty, whatever the parties may have called it. Calling the thing rent will not make it so. On the other hand, where it is impossible to estimate the damage, or a rate of forfeiture proportioned to the damage is reserved, it is considered liquidated damages, or, sometimes, an increased rent, or penal rent.[1]
 The present comes within the first class of cases. The removal of the most trifling articles of furniture, and that but a week before the expiration of the lease, would, according to the terms of the instrument, entail upon the tenant the forfeiture of the whole sum of $3000, as well as of his lease, equally with the removal of the whole contents of the house at the commencement of the term. The removal may be repeated a dozen times, and the right of Mrs. Dermott accrues as often as the removal takes place. It is apparent, too, in this case, that the utmost damage which the plaintiff in error could have suffered was the loss of about two months' rent, for which she claims a whole year's.
 2. If this was a case of penalty, the plaintiff in error had no right to distrain for it.
 Before the statute 8 and 9 William III,[2] a party might obtain judgment at common law, for the whole amount of the penalty of a bond. But even then the distinction between penalties and liquidated damages was known; and in the former case, courts of equity would restrain proceedings at law, and direct an issue of quantum indemnificatus. And now, in the common law courts, a judgment can only be had for the actual damage.[3]
 If a party cannot obtain judgment for a penalty, a fortiori, he cannot distrain for it. The right of distress, which is a right to take the law into one's own hands, is exceptional, and not to be favored. It is of the essence of this right that the rent or service distrained for should be certain in amount and time of payment, and therefore distress was never allowed where the services due were uncertain, in either respect.[4] Nor can agreement of the parties make any difference in this respect. No case can be found in which a distress for a penalty has been sustained.
 3. By the common law, where a nomine poenae is given for non-payment of rent, the lessor must demand the rent before he can be entitled to the penalty; and where a right of distress is given by agreement, a demand is necessary to entitle a party to distrain. This is ancient law. Grobham v. Thornborough, in Hobart's Reports,[5] is in point. Grobham there brought debt of 100 against Thornborough, on a lease, 60 being for rent, and 40 'a nomine poenae of 8 shillings a day for non-payment,' for a hundred days. Judgment was given for him for the 60 rent. 'But,' says Lord Hobart, 'for the 40 pain, it was adjudged against the plaintiff, because he laid no actual demand, without which a pain is not forfeited.'
 By parity of reasoning, even if a right of distress existed in this case, there must have been a previous demand, either to replace the goods alleged to be removed, or to pay the $3000. The tenant was entitled to a reasonable time to replace the goods. Until such time elapsed without their being replaced, and until demand made, no right accrued.
 Mr. Brent, contra.
 Mr. Justice NELSON delivered the opinion of the court:
 
 
 1
 The case turns mainly upon the question whether the $3000 mentioned in the lease, accruing on the happening of this event, is rent or a penalty.
 
 
 2
 The argument on behalf of the tenant is, that by the true construction of the lease, the landlord, on the happening of the event, may at his option consider the term as ended, and re-enter, and in addition distrain for the $3000, and hence the term having ended, or it being in the power of the landlord to end it, the sum reserved cannot be regarded as rent, but as a penalty, as the relation of landlord and tenant has ceased.
 
 
 3
 We do not agree to this construction. Although the wording of the clause occasions some obscurity and hesitation, yet, regarding the sense and substance of it, there can be little doubt about its meaning. It will be observed, that if the tenant assigns or underlets, the term ceases at the option of the landlord. So in the event of the removal or attempt to remove the goods. Now the words, 'at the sole option and election' of the landlord, are superfluous, if intended to be limited to this breach of the covenant. All that was necessary was the inhibition to assign, underlet, or remove the goods, and the right of re-entry in case of breach. Without giving the option or election, the landlord had the right to waive the forfeiture. Receiving rent with knowledge of the breach is a waiver. So, levying a distress for the rent, or in any other way consenting to a continuance of the term. These words, we are of opinion, are entitled to an influence in the construction of this part of the lease beyond these covenants of forfeiture, and may aid in the construction and meaning of the clause which provides for the payment of the year's rent in advance. And the true meaning we think is, that the landlord may at his option consider the term at an end, and re-enter in the events mentioned, or may at his option (understood), have the year's rent in advance.
 
 
 4
 We do not think the word 'moreover,' in the connection found, necessarily means the rent in advance, in addition to the previous remedies mentioned, but rather an alternative remedy.
 
 
 5
 These covenants are inserted in a lease for the better security of the rent. The one in question simply makes the rent payable in advance, instead of by instalments, on the happening of the event stated. It would have been not only strange but unreasonable to have made this stipulation as contended for on the part of the plaintiff, to take effect at the moment the term ceased, or might be put an end to by the landlord. The words should be very clear and controlling to lead to such an interpretation.
 
 
 6
 It is argued that the reservation of this $3000 rent in advance should be regarded as a penalty, for the reason that the event would happen on the removal of a single article of goods, and that the remedy is out of reasonable proportion to the injury. But the answer is, the covenant against removal necessarily embraced all the goods on the premises that furnished security for the rent, and it is not for the tenant to set up as a defence to its enforcement, that the breach is not as great as it might have been. The removal of a single article is a wrong which he is not permitted to take advantage of, and besides, there is no hardship in the case, for if he desired to remove any particular article, the covenant permits it on replacing goods of equal value.
 
 
 7
 The removal of the goods took place on the 18th of May, 1857, some year and five months before the expiration of the lease, so that practically the reservation of the rent in advance, on the event in the lease happening, works but simple justice to all parties. It became the substitute for the rent reserved payable monthly. If the tenant had brought about the event by the removal of the goods within a year of the termination of the lease, whether or not he might have had a remedy to abate the excess, we need not discuss.
 
 
 8
 JUDGMENT REVERSED, and cause remanded for a venire de novo.
 
 
 
 [1]
 See the cases cited in 2 Greenleaf of Evidence, §§ 258 and 259.
 
 
 [2]
 C. 11, § 8.
 
 
 [3]
 See Comyn, Landlord and Tenant, 571, Bk. IV, ch. 2.
 
 
 [4]
 Bradby on Distress, 17.
 
 
 [5]
 Page 82.