SUMMA CORPORATION, a DELAWARE CORPORATION, APPELLANT, v. T. W. RICHARDSON, MAURICE H. FRIEDMAN, NORMA D. FRIEDMAN, JACK BAR-ENFELD, BELDON R. KATLEMAN, IRVING J. LEFF, DOES I THROUGH V, AND DOE COMPANIES I THROUGH IV, RESPONDENTS.

No. 8419

April 21, 1977                    564 P.2d 181

---

[Rehearing denied June 8, 1977]

*Morse, Foley and Wadsworth,* Las Vegas, for Appellant.

*John Peter Lee* and *James C. Mahan,* Las Vegas, and *Arthur J. Crowley,* Los Angeles, for Respondents.

## OPINION

By the Court, BATJER, C. J.:

Appellant Summa Corporation brought suit against respondents for specific performance of options to purchase contained in two leases executed by respondents and subsequently assigned to Summa by Shelam Incorporated, the original lessee. After the parties filed cross-motions for summary judgment, the district court entered its order granting respondents' motion and denying appellant's. Because Summa was entitled to exercise the options and properly did so, respondents' summary judgment must be reversed.

On June 15, 1965, respondents leased two parcels of land, including improvements thereon, to Shelam Incorporated for a term of fifteen years. One of the improvements located on parcel "A" was the Silver Slipper Casino. The lease contained an option giving the lessee the privilege of purchasing the parcels and required written notification of the exercise of this option along with a deposit of $100,000 on account of the purchase price. To consummate the purchase, the lessee was required to open an escrow account at the Bank of Las Vegas (now Valley Bank), Las Vegas, Nevada, and the lease was to constitute the primary escrow instructions.

By the terms of the lease, the lessee could assign it without respondents' permission, except the written consent of the president or vice-president of the Bank of Las Vegas was first required before the assignment of any gaming casino on the premises. Further, the lease specifically provided that its terms, provisions, and covenants inured to the benefit of the lessee's assigns.

On April 3, 1967, respondents entered into a second lease with Shelam for a small vacant parcel adjacent to the previously leased land. The lease incorporated by reference most of the provisions of the 1965 lease and also contained an option to purchase. However, the exercise of this option was made contingent upon the exercise of the option to purchase parcel "A" contained in the 1965 lease.

Negotiations conducted during April of 1968 between Shelam, Howard R. Hughes, and Summa's predecessor, Hughes Tool Company, culminated in the assignment to Summa of

Shelam's interests in the two leases. Summa obtained the necessary consent to the assignment from the bank and thereafter, on March 29, 1973, gave notice of its exercise of the options contained in the leases. The notice was sent by certified mail, and also hand delivered, to an address in Los Angeles, California, which had been designated in the 1965 lease as the place to send notices to lessors. Inasmuch as that address proved to be vacant, Summa also sent notices to respondents at their individual addresses and at the Bank of Las Vegas. Because the 1965 lease provided that all rents or other monies due respondents were to be paid at the Bank of Las Vegas, Summa deposited with the bank a cashier's check for $100,-000, payable to an account established by respondents for the receipt and disbursement of rents and other monies payable pursuant to the lease.

At this juncture, the transaction broke down. Respondents' rejected Summa's exercise, and Summa commenced action for specific performance. Both parties moved for summary judgment, and, after a hearing on the matter, the district court determined no genuine issue of material fact remained, Summa was not entitled to exercise the option contained in the 1965 lease, and in any event, Summa's exercise of the 1965 option was not effected in conformity with the terms of that option. Accordingly, the district court denied Summa's motion for summary judgment and entered summary judgment in favor of respondents. Since the exercise of the 1967 option was contingent upon the exercise of the 1965 option, we must determine whether (1) the 1965 option passed to Summa with the assignment of the lease, (2) Summa's failure to perform conditions precedent and subsequent precluded its exercise of the 1965 option, and (3) Summa exercised the 1965 option in accordance with the terms of the lease.

1. Ordinarily, an option to purchase contained in a lease passes upon the assignment of the lease to the assignee, entitling it to specific performance of the agreement to convey. Jamson v. Poulos, 168 N.W.2d 526 (Neb. 1969); Humble Oil & Refining Company v. Lennon, 182 A.2d 306 (R.I. 1962); Texas Co. v. Butler, 256 P.2d 259 (Ore. 1953). If the exercise of the option is made personal to the lessee, it cannot be assigned to another. Anno., 38 A.L.R. 1162, 1172 (1925). Respondents contend the option clause in the 1965 lease, by its terms, expressly limits its exercise only to Shelam, and therefore it did not pass with the assignment of the lease. That part

of the instrument upon which respondents rely in support of this contention provides:

> If the Lessee shall then be entitled to exercise the option to purchase Parcel "A" and Parcel "B", it shall first give notice in writing of its exercise of said option, accompanying said notice with a deposit of One Hundred Thousand Dollars ($100,000) on account of the purchase price. After giving such written notice and making such deposit, the Lessee may assign said option, and not before.

While a lessor may restrict the right of assignment, covenants dealing with assignments should not be extended by implication. Cummins v. Dixon, 265 S.W.2d 386 (Mo. 1954). The above quoted provision does not limit the exercise of the option exclusively to Shelam. *See* Myers v. J. J. Stone & Son, 102 N.W. 507 (Iowa 1905); Anno., 45 A.L.R.2d 1034, 1950 (1956). Instead, the provision is merely an anti-severability clause. It prevents the lessee or its assigns from transferring the option, before its exercise, independently of the leasehold interest which, absent the provision, might arguably be permissible. *See* Gilbert v. Van Kleeck, 132 N.Y.S.2d 580 (Sup.Ct. 1954); Bewick v. Mecham, 156 P.2d 757 (Cal. 1945); 1 American Law of Property § 3.82 at 361 (1952). Since the provision only prevents the severance of the option and leasehold interests prior to exercise, and does not make the exercise personal to Shelam, the option passed to Summa upon the assignment of the lease.

As an apparent afterthought, respondents also argue the option is personal to Shelam because the purchase involves the extension of credit to the original lessee. Jurisdictions are in conflict on the question of whether the extension of credit to the original lessee, as a matter of law, makes the option personal, and therefore non-assignable. *See* Rosello v. Hayden, 79 So.2d 682 (Fla. 1955). Here, however, the contract did not involve a relation of personal confidence and trust on the solvency or credit of Shelam. To the contrary, the land was to serve as security for the purchase, and the lease specifically provided the right to purchase could be assigned to another. Under such circumstances, it can not be argued that respondents reposed such personal trust in Shelam's financial ability as to make the option personal to Shelam.

2. As a condition precedent to the exercise of the 1965 option, the lessee was required to faithfully perform all the terms, conditions, and covenants of the lease.[1] Respondents contend this condition precedent was not satisfied due to Summa's technical breaches of the lease, and Summa therefore forfeited any right it had to exercise the option. Summa counters by claiming respondents' subsequent acceptance of rents with knowledge of the breaches constituted a waiver of the condition precedent. Even assuming, as we must, that the breaches in fact occurred, Short v. Hotel Riviera, Inc., 79 Nev. 94, 378 P.2d 979 (1963), we conclude respondents waived any right to forfeiture.

Whether breaches of a lease constitute a forfeiture of the option to purchase contained therein depends, among other things, on the circumstances surrounding the breaches and the exercise of the option. *See* Phillips v. Hill, 555 P.2d 1043 (Okla. 1976). While parties to a lease are basically free to determine their own terms, it is fundamental that forfeitures of purchase options in leases are not favored. Atlantic Greyhound Corp. v. Smithdeal, 192 F.2d 453 (4th Cir. 1951). Any inconsistent act, dealing, or expression of intent not to require the doing of a thing suffices to prevent a forfeiture based on the nonperformance of such thing. Group Property v. Bruce, 248 P.2d 761 (Cal.App. 1952). Even though there is a condition precedent to the exercise of a purchase option, it can be waived or the lessor can be estopped from asserting it. *See* Bio-Ramo Drug Company v. Abrams, 184 A.2d 831 (Md. 1962); Friedman, Friedman on Leases § 15.2 (1974); *cf.* Reno Realty v. Hornstein, 72 Nev. 219, 301 P.2d 1051 (1956).

A lessor's acceptance of rents with knowledge of prior breaches can constitute a waiver of conditions precedent to the exercise of an option to purchase. *See* Bridges v. Jeffrey, 437 S.W.2d 732 (Ky.App. 1968); *cf.* Sharp v. Twin Lakes Corp., 71 Nev. 162, 283 P.2d 611 (1955); Larsen v. Sjogren, 226 P.2d 177 (Wyo. 1951). Respondents' argue such a waiver is precluded by a specific provision in the 1965 lease which provides: "The subsequent acceptance of rent . . . shall not be construed to be a waiver of any preceding breach by Lessee

---

[1]The 1965 lease provided in pertinent parts: "This option to purchase . . . may be exercised only if . . . the Lessee shall have fully and faithfully performed all the terms, covenants and conditions of this Lease. . . ."

. . . , regardless of Lessor's knowledge of such preceding breach at the time of acceptance of such rental or other payment." However, such a nonwaiver clause will not, in all circumstances, foreclose the lessor from waiving a forfeiture based on past breaches. *See* Sagson Co. v. Weiss, 374 N.Y.S.2d 88 (Sup.Ct. 1975); Gonsalves v. Gilbert, 356 P.2d 379 (Hawaii 1960).

Here, respondents recognized the validity of the lease, accepted rents with no expression of intent to stand on any legal rights they may have had because of Summa's prior breaches, made no demand on Summa to remedy them, and otherwise lulled Summa into inaction. Only after Summa's exercise of the options did respondents seize upon the breaches as a means to establish Summa's forfeiture of the privilege to exercise. Under such circumstances, respondents, by their conduct, waived any right to assert forfeiture for Summa's infractions of the lease prior to exercising the options.

Further, respondents can not rely on alleged breaches occurring after Summa's exercise as grounds for forfeiture. Upon the exercise of the option, the landlord-tenant relationship of the parties was converted to that of vendor-vendee. 1 American Law of Property § 3.84 at 363 (1952). After exercise, respondents can not avail themselves of breaches of covenants in the lease to work a forfeiture of the option. Larsen v. Sjogren, cited above.

3. Finally, respondents contend Summa did not exercise the 1965 option in accordance with its terms because $100,000 cash did not accompany Summa's notice of exercise and the option was not exercised within the time set forth in the lease.

The lease provided that the lessee "shall first give notice in writing of its exercise of said option, accompanying said notice with a deposit of One Hundred Thousand Dollars ($100,000) on account of the purchase price." Further, "[a]ll rents or other monies due the Lessor . . . shall be paid to Lessor . . . at the Bank of Las Vegas. . . ." Respondents urge that Summa should have included the money with the notice which was sent to the address in California. However, due to the vacancy at that address, such action by Summa would have been highly improvident. It is apparent that Summa's tender would have been refused under any condition. Faced with these circumstances and with no guidance, other than the provisions stated

above, as to whom or where the money was to be sent, Summa's deposit of the money with the bank was reasonable. *Cf.* Finnell v. Bromberg, 79 Nev. 211, 381 P.2d 221 (1963); Milner v. Dudrey, 77 Nev. 256, 362 P.2d 439 (1961).

Respondents' contention that the exercise of the option was not timely is also without merit. By an amendment dated October 18, 1965, the term of the 1965 lease commenced November 1, 1965. The lease provided the option could be exercised between the first day of the sixtieth month and the last day of the ninetieth month of the term; that is, between November 1, 1970 and April 30, 1973. Summa exercised the option on March 29, 1973.

Summa held the privilege to exercise the options contained in the 1965 and 1967 leases, did not forfeit that privilege, and properly exercised the options. Accordingly, respondents' summary judgment is reversed, and the district court is directed to enter judgment for Summa.

ZENOFF, MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.