ENTREPRENEUR, LTD., Appellant,

v.

Marshall I. YASUNA, Appellee.

No. 82–616.

District of Columbia Court of Appeals.

Argued Jan. 25, 1985.

Decided Sept. 27, 1985.

turned a verdict for the landlord and assessed $24,000 in damages against the tenant, and the trial court entered an order finding the option void. We hold that notwithstanding any default under the lease, the extreme sanction of forfeiture of the lease for any such default is not warranted in the circumstances of this case. In addition, we find that the tenant's option to purchase the property remains viable. We reverse and remand to the trial court with instructions to enter judgment for tenant-appellant on the landlord's claim for possession, and for additional factfinding on tenant's claim for specific performance of the option contract.

## I.

Appellant Entrepreneur, Ltd., is a mail-order business dealing in antiques, marine and aircraft materials. Its sole shareholder and owner is Jack Bachman. Until 1973, Bachman operated Entrepreneur from the fourth floor of his townhouse home in the District, at 2142 Cathedral Avenue, N.W. In April of 1973 Bachman entered into a lease on behalf of Entrepreneur with Muriel Yasuna, the owner of an adjoining townhouse, 2140 Cathedral Avenue. The lease was for a term of five years, commencing on May 1, 1973, at a monthly rental of $675. The lease incorporated an addendum which, among other provisions, granted Entrepreneur a five-year option to purchase the property for $125,000 cash and a right of first refusal. Yasuna granted Entrepreneur permission to break through the wall between the two townhouses. In addition, a form provision that "lessee covenants that he will not carry on any business" in the subject property was crossed out on the face of the lease. Entrepreneur did covenant that it would not "use the [property] for any disorderly or unlawful purpose." If it did so, the lease would "cease and determine, and [ ] operate as a NOTICE TO QUIT, the thirty days' notice to quit being hereby expressly waived." Entrepreneur also agreed "that no waiver of one breach of any covenant

B. Michael Rauh, Washington, D.C., with whom Martin Shulman and Tom A. Lippo, Washington, D.C., were on the briefs, for appellant.

MacKenzie Canter, III, Washington, D.C., with whom Mark J. Diskin, Washington, D.C., was on the briefs, for appellee.

Before MACK, FERREN and TERRY, Associate Judges.

MACK, Associate Judge:

This is an action for possession of the premises at 2140 Cathedral Ave., N.W., based on an alleged forfeiture of the contract of lease by tenant-appellant's breach of a lease covenant, and for a declaration that the option to purchase granted tenant by the lease is null and void. A jury re-

herein contained shall be construed to waive or in any manner affect the covenants of this Lease."

Within a few months of taking possession of 2140 Cathedral Avenue, Bachman had moved part of his mail order home business into the premises, and then had a fire door built between the two townhouses. Although he complied with the Housing Code requirements in connection with the fire door, Bachman failed to obtain a certificate of occupancy for his use of the property, as required by the D.C. Code and implementing regulations, *see* D.C. Code § 5–426 (1981);[1] 11 DCMR § 3203.1 (1984);[2] 12 DCMR § 110.5 (1982).[3]

In late 1974, according to her testimony, Yasuna experienced some financial difficulties. In January of 1975, she approached Bachman about increasing the rental on the property. Relying on the lease, Bachman refused to pay a higher rental. Yasuna then asked him to exercise his purchase option, and suggested that as a veteran, he could apply for a low-interest Veterans' Administration loan. Bachman declined on the advice of his accountant, who suggested that for financial reasons he should defer exercise of the option until the close of the five-year lease term. Yasuna attempted to refinance the property herself, but was unsuccessful. Her step-son Marshall, appellee here, subsequently applied for and received a Veterans' Administration loan. The property was transferred to Marshall Yasuna in the spring of 1975. Thereafter, Muriel Yasuna acted as Marshall Yasuna's agent, collecting rent under the lease. Muriel Yasuna did not report the transfer to her stepson as a sale on her 1975 tax return. She did amend her 1975 return to so reflect following a court order in this litigation that she release her 1975 return to appellant. She maintained at trial that she had sold the property to her step-son for $150,000, above the $125,000 option price, even though her amended 1975 return reflects a purchase price of $123,000, below the option price. Yasuna also maintained that she had complied with the "right of first refusal" provision of her lease with Entrepreneur, by offering the property to Bachman at the option price of $125,000 in January of 1975. Yasuna did not state at trial that she informed Bachman that she intended to sell the property to her stepson. Instead, she testified only that she had assumed that if Bachman would not buy the property for $125,000, he would not be interested in it at $150,000. Bachman testified that he was not informed that the property had been sold to Marshall Yasuna until January of 1977, and was therefore not given an opportunity to exercise his right of first refusal under the lease.

In connection with the Veterans' Administration loan to Marshall Yasuna, V.A. officials conducted an inspection in order to appraise the property. Muriel Yasuna accompanied the V.A. inspector during the appraisal, held December 17, 1974. The V.A. report stated that the fourth floor of the property contained a home office. Muriel Yasuna testified that at that inspection, she first learned of the office use, and that sometime in 1974 she checked to see if Bachman had obtained a certificate of occupancy. When she discovered that such a certificate had not been obtained, she complained to zoning authorities—in 1975, ac-

---

1. That section provides, in relevant part:
 In the event that [the zoning] regulations provide for the issuance of certificates of occupancy or other form of permit to use, it shall be unlawful to use any building, structure, or land until such certificate or permit be first obtained.

2. That section provides, in part:
 [N]o person shall use any ... part of any structure ... for any purpose other than a one-family dwelling until a certificate of occu-

pancy has been issued to that person stating that the use complies with the provisions of this title and the D.C. Building Code (Title 12 DCMR).

3. That section provides:
 It shall be the responsibility of the owner, tenant, or authorized agent to file an application in all cases where a certificate of occupancy is required.

cording to her testimony—requesting that they inspect the property. She said that Bachman denied entrance to the property from 1975 until 1977. This testimony was contradicted by Stephen McCarthy, acting Chief of the Zoning Inspections Office, who said that the first complaint his office received from Muriel Yasuna was dated February 10, 1977. In addition, Bachman testified that Yasuna did not request entry into the premises until some time in 1977.

According to Bachman's testimony, uncontradicted by Muriel Yasuna, on January 16, 1977—just before the documented complaint to the zoning office—Yasuna told Bachman she was tired of carrying him (referring to a $600 difference between Bachman's rent and Yasuna's monthly mortgage payments). On that date, in addition, she first informed Bachman that she had transferred the property to her stepson. At this meeting Muriel Yasuna did not complain of any lease violation. Yasuna did not so complain until January 31, 1977, when she sent Bachman a notice that he was in violation of "applicable provisions of the District of Columbia Code" and that Bachman would be required to vacate by March 1, 1977. No mention was made of the certificate of occupancy problem in this notice, however, and the notice did not mention any specific provision of the Code. Yasuna subsequently accepted rent for February, 1977. On February 2, 1977, Bachman notified the Yasunas that he intended to exercise his option on the property, and on March 1, 1977, he filed the required notice under the lease of exercise of a purchase option. On March 8, 1977, counsel for Yasuna sent Entrepreneur a notice that stated that the "premises ha[ve] been used for an unlawful purpose as defined by Section 5–433 of the District of Columbia Code." This notice, however, does not state that the purpose is unlawful because of the failure to comply with zoning requirements, and at that time there was no section 5–433 in the District of Columbia Code. On March 24, counsel for Yasuna sent a second notice to vacate the premises to Entrepreneur, again based on the fact that the use of the premises violated the nonexistent D.C. Code § 5–433. Following a request for clarification, on March 25, 1977, counsel for Yasuna notified Entrepreneur that the applicable section of the Code violated by Entrepreneur's use of the property was D.C. Code § 5–422 (1973), the certificate of occupancy requirement. Marshall Yasuna filed a complaint for possession of the property based on Bachman's violation of the lease covenant prohibiting "unlawful" uses of the property on May 5, 1977. The alleged "unlawful" use was the failure to obtain a certificate of occupancy for a business use in an area zoned R–4 residential. The complaint also requested a declaratory judgment that the option to purchase was void because of the "unlawful" use.

On March 8, 1977, the zoning office first inspected the property. Inspectors returned in April of 1977, and after touring the fourth floor office they recommended to Bachman that he apply for a home occupation permit. Bachman did apply for both a permit and a certificate of occupancy. Both were denied by the zoning authorities, and that denial was affirmed on appeal. Bachman thereupon moved his office to a different location.

In the answer filed in response to the complaint, Bachman asserted several defenses, among them that the option contract was not void and that he had taken all necessary steps to exercise the option. The answer did not request "specific performance" of the option contract in a separate counterclaim, however. Because of this omission, the trial court, on the first day of trial, struck Bachman's claim based on the option agreement and excluded evidence relating to that claim. Excluded information included evidence tending to prove that Yasuna's Veterans' Administration mortgage had been obtained through misrepresentation; that the V.A. would not have approved the mortgage had it been informed of the outstanding right of first refusal and purchase option under Entrepreneur's lease; and that the threatened

exercise of the purchase option by Entrepreneur would have alerted the V.A. to the true state of affairs and therefore the termination on the stated grounds of breach of the lease covenant was pretextual.

The jury returned a special verdict finding that Entrepreneur had breached the lease covenant against "unlawful" use, and that Yasuna had not waived the breach. The jury also apparently agreed with Yasuna's contention that the lease was void as of 1975—when, according to Yasuna, she first became aware of Bachman's business use without a certificate of occupancy—since the jury held Entrepreneur liable in damages for $24,000 in rent payments, representing the difference between the "fair market rental" of the property from 1975 to 1982 and the amount actually paid by Bachman as a "holdover" tenant. The trial court then entered an order declaring Entrepreneur's purchase option null and void. This appeal followed.

## II.

The first question to be determined is whether Entrepreneur's failure to apply for a certificate of occupancy until notified of the zoning requirements, and its use of the premises without such a certificate, justifies a forfeiture of the lease.

 Both parties plainly contemplated that the premises might be used for business purposes. The elimination of the lease covenant prohibiting such use reflects that understanding; Muriel Yasuna entered into the lease with a corporate entity, Entrepreneur, Ltd., not a private person; and moreover, Yasuna testified that she had no objection to home office use as long as the requisite permits were obtained. Although the zoning laws prohibit business

use on the premises without a certificate of occupancy, and both parties anticipated business use, the lease itself may not be considered one for an "unlawful purpose," because the zoning laws incorporate a procedure by which such a certificate, and variances from the letter of the zoning law, may be obtained. *See* RESTATEMENT (SECOND) OF PROPERTY § 9.1 note 3, at 308 (1977). "In respect to the allowance of variations from their prescribed terms zoning laws are unique." *Warshawsky v. American Automotive Products Co.*, 12 Ill.App.2d 178, 184, 138 N.E.2d 816, 819 (1956). *See also Gorieb v. Fox*, 274 U.S. 603, 607, 47 S.Ct. 675, 676, 71 L.Ed. 1228 (1927) (discussing "wisdom" of variance procedure, since inflexible application of zoning laws would result in "great and needless hardship").[4]

 Parties may bind themselves to a contract that calls on its face for a use of property that violates the zoning laws because, due to the possibility of obtaining a variance, such a bargain is not "against public policy or public morals." *McNally v. Moser*, 210 Md. 127, 135, 122 A.2d 555, 560 (1956). Conversely, a party may not terminate a lease on the grounds of illegality or impossibility due to the impediment of a zoning ordinance. In *McNally*, for example, the tenant attempted to avoid his obligations under a lease by bringing about a challenge to his own use of the property, requesting an advisory opinion from the zoning office that his use was illegal. The Maryland court of appeals said the following in this connection:

> We think that [the tenant], having brought about the challenge to the use [requesting an advisory opinion from the Zoning Office] so that he could escape

---

**4.** Even if the lease had permitted business use alone, it would still be an enforceable contract as long as there was a legal possibility of obtaining a permit or variation under the zoning law for that use. Had the tenant failed to obtain such a permit or variation, as long as some permissible use of the property existed under the zoning laws, the parties would be held liable under the terms of the lease. *See* RESTATEMENT (SECOND) OF PROPERTY, *supra* § 9.2 note 3, at 316 ("Where the tenant needs to obtain a permit, license or variance to use the leased property in the manner required by the lease, the majority rule is that the lease remains valid if the tenant fails to obtain such permit, license or variance."); *id.* note 4; 3 M. FRIEDMAN, FRIEDMAN ON LEASES § 27.302b, at 1218–19 (2d ed.1983).

his responsibilities under the lease, could not stand idly by and, because of a notice to that effect from an administrative official, gladly accept as a fact that his use of the office was illegal. Before he can say that the use of the premises as professional offices by him was impossible, he was under an obligation, either on his own or through the [landlords], who were willing to act[,] to attempt to establish a right to continue that use, or at least to wait until impossibility became a fact, not merely a possibility. One may not rely on illegality or invalidity where the doing of that said to be forbidden may reasonably be made legal and possible through administrative or judicial action.

*Id.* at 137, 122 A.2d at 561. Thus, even though the parties here contemplated the operation of a business on the premises, the lease is not void, because the possibility of obtaining a variance from the letter of the zoning law prohibiting nonresidential use of 2140 Cathedral Avenue remained open until after the instant suit was brought; and once the issue was finally adjudicated, Bachman ceased his business use of the property.[5]

 In such a case "it will be presumed [that] the parties contemplated that a license would be obtained." *Warshawsky v. American Automotive Products*

*Co., supra,* 12 Ill.App.2d at 188, 138 N.E.2d at 821. Bachman, however, did not attempt to obtain a certificate of occupancy or a home office permit on behalf of Entrepreneur until he was notified that he was in violation of the zoning laws. His use of the premises without the required licenses violated the District of Columbia Code and applicable regulations, *see supra.* This was "unlawful use" within the terms of the lease covenant prohibiting such use, and the jury so found. Although Bachman testified that he was unaware of the zoning regulations, and that he relied on advertisements that the group of townhouses of which No. 2140 Cathedral was a part were suitable for home offices, knowledge of the applicable law must be imputed to him. Both parties are presumed to have known of the zoning restrictions on the property, and of the certificate of occupancy requirement for any nonresidential use of the property, *see Hoff v. Sander,* 497 S.W.2d 651, 653 (Mo.App.1973) (per curiam); *Warshawsky v. American Automotive Products Co., supra,* 12 Ill.App.2d at 182, 138 N.E.2d at 818.

 It does not follow, however, that the lease was properly forfeited for breach of the "unlawful purpose" covenant. Notwithstanding the provision that the lease will "cease and determine" upon

---

5. *See Verschell v. Pike,* 85 A.D.2d 690, 691, 445 N.Y.S.2d 489, 491 (1981) ("A lease providing for a use of premises which is prohibited by the zoning law is not necessarily illegal where it appears that an appeals board has the authority to permit a variance."); *Pennsylvania State Shopping Plazas, Inc. v. Olive,* 202 Va. 862, 865–866, 120 S.E.2d 372, 375 (1961) (where "the zoning laws permit a variance in the regulations and some discretion may be exercised by the proper authorities in granting a permit for a proposed use," the parties may not be excused from performance under the lease); *Sachs Steel & Supply Co. v. St. Louis Auto Parts & Salvage Co.,* 322 S.W.2d 183, 187–88 (Mo.App.1959) (tenant may not avoid lease on grounds of illegality or impossibility where premises may be brought within the zoning ordinance by obtaining a variation); *Young v. Texas Co.,* 8 Utah 2d 206, 209–210, 331 P.2d 1099, 1100–01 (1958) (even if zoning ordinance makes contemplated use of premises illegal at time lease is executed, lease

is not void where it is possible to obtain a change in the zoning ordinance so that use can be made legal); *Stockburger v. Dolan,* 14 Cal.2d 313, 316, 94 P.2d 33, 34 (1939) ("a lease which contemplates action by governmental authorities before the property may be used for the purpose specified in it is not illegal"); *Say-Phil Realty Corp. v. De Lignemare,* 131 Misc. 827, 828, 228 N.Y.S. 365, 367 (1928) (same); *Standard Brewing Co. v. Weil,* 129 Md. 487, 488–489, 99 A. 661, 662–63 (1916) (inability to obtain a license is not a valid defense to enforcement of a lease or justification for its termination as long as there is some use for the property in its unlicensed state); *Shedlinsky v. Budweiser Brewing Co.,* 163 N.Y. 437, 439, 57 N.E. 620 (1900) ("A lease, valid ... upon its face, is not to be condemned as unlawful, and therefore an unenforceable instrument, because the purpose for which the demised premises [was] to be used might, under certain circumstances be within the prohibition of a statute.").

the use of the premises for any "unlawful purpose," the lease was not automatically void upon breach of the covenant—*i.e.*, at Bachman's first business use without a certificate of occupancy—but was merely voidable at the election of the lessor. *Small v. Clark*, 97 Me. 304, 310, 54 A. 758, 760 (1903).[6] A lease continues to be valid as against a lessee in breach of a lease covenant until such time as the landlord manifests some intent to take action based on the lease violation. *Schlegel v. Bott*, 93 N.J.Eq. 607, 610, 117 A. 605, 606–07 (1922); *Larsen v. Sjogren*, 67 Wyo. 447, 463–466, 226 P.2d 177, 182 (1951).

 Once such an intent is manifested, the question becomes whether the forfeiture contemplated by the reentry clause of the lease—which provides that the lease shall cease and determine upon the breach of any of its covenants—should be enforced. As a general rule, "[f]orfeiture of a leasehold for conditions broken ... [is] looked upon with disfavor," *Burrows Motor Co. v. Davis*, 76 A.2d 163, 164 (D.C. 1950), and leases are strictly construed against the party claiming forfeiture, *id.*[7] The event upon which the right of forfeiture may be exercised under the lease must be clearly defined; the party entitled to do so must exercise his right promptly; and the result of enforcing the forfeiture must not be unconscionable. *See, e.g., Cleveland v. Salwen*, 292 Pa. 427, 430–431, 141 A. 155, 156 (1928); *Meers v. Tommy's Men's Store, Inc.*, 230 Ark. 49, 51–52, 320 S.W.2d 770, 772–73 (1959). Relevant in determining whether forfeiture should be required are facts tending to show that one of the parties "has violated fundamental principles of fair dealing" under the lease. *Rose & Crown, Ltd. v. Shaw Enterprises, Inc.*, 28 Md.App. 548, 558, 346 A.2d 459, 465 (1975). Where the tenant demonstrates that a breach was declared only when the landlord for other reasons desired to dispossess the tenant, so that the alleged breach is pretextual, the action for possession will be disallowed. *See Schwarz v. Sorbello*, 139 N.J.Eq. 542, 548–549, 52 A.2d 683, 687 (1947) (landlord not permitted to continue with dispossession proceeding where breach of covenant issue was raised only after landlord decided to sell property to third party). For example, in *Kearns v. Barney's Clothes, Inc.*, 38 Misc.2d 787, 789–791, 239 N.Y.S.2d 318, 320–22 (1963), an action for possession based on a tenant's violation of city ordinances, the court would not permit the tenant's violation of those ordinances to be "twisted into a device to accomplish a purpose motivated solely by Landlord's self-interest, or to cloak with propriety" the attempted forfeiture, *id.* 239 N.Y.S.2d at 321. And in *Cleveland v. Salwen, supra*, the court found that surrounding circumstances demonstrated that the real purpose of the lessor in maintaining that his tenant had breached a lease covenant was to oust the tenant in order to get a better price for the property, and that such information was relevant in determining that forfeiture

---

6. [A]lthough the lease is forfeited or annulled and made void by the act of the tenant, the owner is not compelled to take advantage of it.... [I]f he permits the tenant to remain, the tenant's occupation is lawful. The tenant's occupation is at no time unlawful unless and until the "owner" determines the right of occupation.... "[T]he effect of a condition, making a lease void upon a certain event, is to make it void at the option of the lessor only in cases where the condition is intended for his benefit, and he actually avails himself of his privilege." ... [T]he lease is voidable only at the election of the lessor, and is not rendered absolutely void, [al]though it provides that it shall be null and void in case of such breach.... The landlord had a right to treat it as void, and to enter and expel his tenant. But he might also refrain from this exercise of his rights, and, so long as he did so refrain, the lease would continue to be valid against the tenant and all other persons and it would continue valid till he should do some act to avoid it.

*Small v. Clark*, 97 Me. at 309–311, 54 A. at 759–61 (citation omitted).

7. *See Independence Flying Serv., Inc. v. Abitz*, 386 S.W.2d 399, 404 (Mo.1965); *Brazeal v. Bokelman*, 270 F.2d 943, 946 (8th Cir.1959); *Murphy v. Traynor*, 110 Colo. 466, 469–470, 135 P.2d 230, 231 (1943); *Paducah Home Oil Co. v. Paxton*, 222 Ky. 778, 779–781, 2 S.W.2d 650, 651 (1928).

should not be enforced. 292 Pa. at 433, 141 A. at 157. The court reasoned that " 'forfeitures are odious in law, and are enforced only where there is the clearest evidence that that was what was meant by the stipulations of the parties. There must be no cast of management or trickery to entrap the party into a forfeiture.' " *Id.* (citation omitted). This result is mandated by the principle that " 'one having a legal right shall not be permitted to avail himself of it for the purpose of injustice or oppression.' " *Nicoli v. Frouge Corp.,* 171 Conn. 245, 247, 368 A.2d 74, 76 (1976) (citation omitted).

Also relevant to the question of forfeiture is whether any prejudice has accrued to the landlord by reason of the breach, *57 E. 54 Realty Corp. v. Gay Nineties Realty Corp.,* 71 Misc.2d 353, 354, 335 N.Y.S.2d 872, 873 (1972); *Howard D. Johnson Co. v. Madigan,* 361 Mass. 454, 458, 280 N.E.2d 689, 692 (1972); whether the breach was willful or committed by inadvertence or mistake, *Molyneaux v. Town House, Inc.,* 195 A.2d 744, 746–47 (D.C. 1963) (court of law or equity may relieve tenant from forfeiture as penalty for breach of lease covenant if default was not willful or deliberate); and whether the lessee acted in good faith, *Food Pantry, Ltd. v. Waikiki Business Plaza, Inc.,* 58 Haw. 606, 613–614, 575 P.2d 869, 876 (1978); *Humphrey v. Humphrey,* 254 Ala. 395, 399, 48 So.2d 424, 427 (1950). "A breach by a tenant must be a violation of a substantial obligation to be enforceable by forfeiture," notwithstanding the inclusion in a lease of a clause purporting to permit termination in case of any breach. 2 M. FRIEDMAN, FRIEDMAN ON LEASES § 16.2, at 840 (2d ed.1983). Some courts have refused to enforce forfeitures in cases where there existed alternative and less drastic means to make the landlord whole, for example by way of damages, *Gonsalves v. Gilbert,* 44 Haw. 543, 553–554, 356 P.2d 379, 385 (1960), or injunctive relief, *Madison 52d Corp. v. Ogust,* 49 Misc.2d 663, 667, 268 N.Y.S.2d 126, 131, *aff'd mem.,* 52

Misc.2d 935, 277 N.Y.S.2d 42 (1966). Courts that have enforced forfeitures have done so only where the record is clear that the landlord has given adequate notice to the tenant of the default and has given the tenant a reasonable period to comply. *See Frog, Inc. v. Dutch Inns of America, Inc.,* 488 A.2d 925, 926–27 & 931 n. 15 (D.C.1985) (two notices provided tenant of multiple lease breaches and tenant given month to comply, yet tenant never even attempted to cure breach; forfeiture upheld); *Interstate Restaurants, Inc. v. Halsa Corp.,* 309 A.2d 108, 109 (D.C.1973) (forfeiture enforced where tenant failed to correct breach following notice and trial court specifically found that tenant had not acted in good faith). *See also* RESTATEMENT, *supra* § 13.1 comment h (landlord may terminate the lease or obtain appropriate legal or injunctive relief only after the landlord "has requested the tenant to perform [his obligations under the lease and remedy the breach] and [has] given him a reasonable time to do so").

When the lessee demonstrates, however, that the landlord long had knowledge of the breach yet provided no notice of it to the tenant, the landlord is considered to have "encouraged the default," and therefore "should not be allowed to take advantage of it." *Cleveland v. Salwen, supra,* 292 Pa. at 432, 141 A. at 156. Where there is no objection from the landlord over a substantial period of time to a known condition, the landlord is not permitted to obtain "a forcible ousting of th[e] Tenant for conduct long known and countenanced by the landlord without complaint or proof of injury." *Kearns v. Barney's Clothes, Inc., supra,* 38 Misc.2d at 791, 239 N.Y.S.2d at 321. *See also Capital View Realty Co. v. Meigs,* 92 A.2d 765, 766 (D.C. 1952) (where evidence demonstrates long action on part of landlord in face of knowledge of breach of covenant, "the landlord by his course of conduct is estopped to insist on enforcement"); *Pearson v. George,* 209 Ga. 938, 944–946, 77 S.E.2d 1, 6 (1953) (failure to repudiate lease contract

on grounds of breach promptly, and subsequent acceptance of monthly rentals without complaint, "would as a matter of law constitute a waiver"); *Paul Pleating & Stitching Co. v. Levine,* 137 Misc. 82, 84–85, 242 N.Y.S. 729, 732 (1930) (same).[8] *Compare Shannon & Luchs Co. v. Tindal,* 415 A.2d 805, 806–07 & n. 2 (D.C.1980) (although waiver may be found as a matter of law where landlord has knowledge of breach and takes no action over a significant period of time, the trial court erred in finding as a matter of law that landlord had waived breach of covenant where there was no indication of acquiescence by landlord in breach and his disapproval of tenant's conduct was manifested immediately; issue of waiver in these circumstances should have been submitted to the jury); *Frog, Inc. v. Dutch Inns of America, Inc., supra,* 488 A.2d at 930 (since issue of waiver not raised to trial court it will not be considered on appeal).

Moreover, the cases are uniform that a landlord may waive even a covenant designed to protect the property from illegal use, *see Copping v. Bertolino,* 245 So.2d 735, 740 (La.App.1971) (landlord may not cancel lease based on tenant's alleged "unlawful purpose" in operating premises without complying with fire ordinances; landlord's knowledge of failure to comply for over two years and its inaction imputes acquiescence to landlord); *Madison Stores, Inc. v. Enkay Sales Corp.,* 207 Misc. 1091, 1096, 142 N.Y.S.2d 132, 138 (1955) (forfeiture not permitted despite violation of zoning regulations; landlord estopped); *Roseman v. Day,* 345 Mass. 93, 98–99, 185 N.E.2d 650, 654 (1962) (landlord's indifference to reports of liquor law violations on property and acceptance of rent after receipt of such information constitutes waiver); *Keating v. Preston,* 42 Cal.App.2d 110, 120–122, 108 P.2d 479, 485 (1940) (landlord

by his conduct waived forfeiture based on alleged illegal use of property).

 Once the landlord has, by his conduct, in effect acquiesced in the breach of the lease covenant, he may stand on his legal right to enforce the covenant only if he gives notice of his intent to the tenant and an opportunity to cure the default prior to declaring a forfeiture. *Robinson v. Cline,* 255 Ark. 571, 573–575, 501 S.W.2d 244, 246 (1973) (finding waiver of forfeiture due to acceptance of late payments and failure to notify tenant of the breach); *Wilson v. Watt,* 327 S.W.2d 841, 853 (Mo.1959) (despite default, landlord must afford tenant "a reasonable opportunity to avoid the hardship that a forfeiture will entail by meeting his obligation" under the lease covenant); *Gonsalves v. Gilbert, supra,* 44 Haw. at 551–553, 356 P.2d at 384; 2 M. FRIEDMAN, *supra* note 4, § 16.501, at 893 ("If landlord has regularly accepted [tenant's] ... performance he may not hold tenant strictly to [lease terms] without giving tenant advance notice of his intended change.... If a pattern of breaches leads tenant to believe it will continue, tenant will be entitled to the notice and warning...."); 3A G. THOMPSON, COMMENTARIES ON THE MODERN LAW OF REAL PROPERTY § 1328 (1981).[9] For where the landlord has long tolerated his tenant's conduct without protest, and has accepted the benefits accruing to him under the lease, it would be "inequitable for landlord to enforce a forfeiture ... at least without a reasonable warning to tenant to conform to the terms of the lease." 2 M. FRIEDMAN, *supra* note 4, § 16.501, at 888. Such a landlord will be estopped from "abandon[ing] his custom and enforc[ing] the terms of the lease literally and strictly without giving fair notice

---

**8.** *See also Dermott v. Wallach,* 68 U.S. (1 Wall.) 61, 65, 17 L.Ed. 680 (1864) ("Receiving rent with knowledge of the breach is a waiver."); *Klein v. Longo,* 34 A.2d 359, 360 (D.C.1943) ("That a lessor may waive the breach of a specific covenant by delay in enforcement, or by the subsequent acceptance of rent, is unquestioned.")

**9.** *See also Schlegel v. Hansen,* 98 Idaho 614, 616, 570 P.2d 292, 294 (1977) (landlord's right of reentry under lease does not eliminate statutory notice requirement and opportunity must be afforded to cure default).

and warning to the tenant who has come to rely on the custom." *Id.* at 897.

The existence of a "no waiver" provision in a lease (*i.e.*, that the waiver of one breach of covenant shall not be construed as a waiver of future breaches) has no effect on the estoppel analysis. This question was discussed in *Tenth & Fifth, Inc. v. Arrowsmith*, 186 Misc. 639, 640–641, 59 N.Y.S.2d 239, 240–41 (1945), *aff'd*, 186 Misc. 864, 65 N.Y.S.2d 344 (1946). There, as in this case, the lease contained a nonwaiver provision and also a covenant that the tenant would use the premises for residential use only. From the inception of the lease term, however, the tenant used the premises as a home office, and the landlord knew of such use. The court dismissed the landlord's petition requesting forfeiture of the lease, reasoning that notwithstanding the antiwaiver provision, a landlord cannot "sit back over a period of many years knowing full well the nature of his tenant's occupancy" and then "at long last determine that this type of occupancy is a violation of the lease." In such circumstances, the antiwaiver provision is ineffective, since there have been "scores of waivers of the breach with knowledge of the violation," *id.* 186 Misc. at 641, 59 N.Y.S.2d at 240, and the landlord is therefore "estopped now from claiming that this occupancy is a violation of the terms of the lease. Any other result would constitute an entrapment of and work a fraud upon this tenant." *Id.* at 641, 59 N.Y.S.2d at 241. And in *Paul Pleating & Stitching Co. v. Levine, supra,* the court determined that as a matter of law an acceptance of rent with knowledge of the breach of a lease covenant constituted a waiver notwithstanding the antiwaiver provision contained in the lease. The court held,

> where a course of conduct has been established ... by the landlord ... something must be done to indicate to the tenant that the landlord intends to live up to the strict letter of the lease. ... [A] proper construction of the waiver clause of the lease would be that the

landlord had not waived his right to insist on [compliance with the covenant] according to the terms of the lease. In other words, he would not have waived his right of insistence upon strict performance by any earlier waiver....

137 Misc. at 84–85, 242 N.Y.S. at 732. *See also Walsh v. Cooper,* 31 A.2d 883, 884 (D.C.1943) (notwithstanding nonwaiver provision, acceptance of rent over long period with clear knowledge of breach and without objection constitutes waiver of covenant); *Stewart v. Shannon & Luchs Co.,* 46 A.2d 863, 864 (D.C.1946) (same; landlord's course of conduct constituted waiver of nonwaiver clause itself as applied to particular covenant); *Dillingham Commercial Co. v. Spears,* 641 P.2d 1, 7–8 (Alas.1982) (notwithstanding nonwaiver provision, failure to object to years of breach of lease covenant requires disallowance of forfeiture); *Summa Corp. v. Richardson,* 93 Nev. 228, 234–236, 564 P.2d 181, 185 (1977) (notwithstanding nonwaiver provision, where landlord had accepted rent without objecting to tenant's prior breach, and no demand was made upon tenant to remedy breach, forfeiture would be disallowed); *Sagson Co. v. Weiss,* 83 Misc.2d 806, 807, 374 N.Y.S.2d 88, 89 (1975) (despite nonwaiver clause, "the acceptance of rent with knowledge of [breach of a lease covenant] constitutes a waiver of the right to terminate the tenancy for breach of the condition").

The trial court in this case erroneously refused to permit the introduction of evidence relevant to the question of forfeiture: evidence proffered to demonstrate that Yasuna had acted in bad faith, and that the asserted violation of the covenant as a basis for termination of the lease was pretextual. Nevertheless, there is substantial evidence of record that the Yasunas acquiesced for a long period of time in the breach of the lease covenant with full knowledge of the breach. The Yasunas failed to afford reasonable notice to Entrepreneur that they intended to enforce the covenant, and in addition did not provide a

reasonable opportunity to cure the breach following such notice. Forfeiture is unnecessary here to vindicate any substantial right of the Yasunas, since no damage has accrued to them by virtue of the breach. *Compare Friedman v. Margiotta,* 180 Misc. 584, 585, 42 N.Y.S.2d 100, 101 (1943) (forfeiture justified where, following notice from landlord, tenant failed to comply with order issued by N.Y. Department of Housing). Enforcement of forfeiture, however, would be inequitable to the tenant, since his admitted breach of the covenant was not willful or deliberate, but inadvertent, and the evidence adduced at trial demonstrates that he acted at all times in good faith. We therefore hold that the Yasunas are now estopped from claiming a forfeiture based on the breach of the covenant.

■ Muriel Yasuna accepted rent on her own behalf and on behalf of her stepson for more than two years with knowledge that Entrepreneur was in breach of the lease covenant, yet Yasuna never informed Entrepreneur that she considered the company to be in default under the lease. Yasuna testified that in late 1974 she discovered both Entrepreneur's office use and its failure to obtain a certificate of occupancy. She admitted, however, that she did nothing to inform Entrepreneur of the breach until 1977. Although she notified Entrepreneur that it was in breach of the lease on January 31, 1977, she did not identify the breach as a violation of the zoning laws until March 25 of that year. Immediately thereafter Entrepreneur attempted to cure the breach. Yasuna suffered no damages by virtue of Entrepreneur's breach: no fine for failure to comply with the zoning law was ever assessed against either Yasuna or Entrepreneur. The Yasunas' asserted fear that such a fine could have been assessed, now put forward as a justification for the lease termination, cannot serve to justify forfeiture in light of the fact that as soon as Entrepreneur was notified of the certificate of occupancy problem, it attempted to cure the violation, and ceased its nonconforming use when the zoning authorities refused to grant a permit for a home office. Even if Entrepreneur had continued its business use after notice of violation, the Yasunas could have obtained an injunction to prevent such use, remedying the asserted problem and making the landlord whole without resorting to the harsh and disfavored sanction of forfeiture. Forfeitures "will not be enforced" unless "there are circumstances which make them reasonably proper for the protection of rights which would be otherwise substantially impaired." *Orange Motors, Inc. v. Meyer,* 107 N.J.Eq. 461, 465, 149 A. 811, 813 (1930). At the time this action came to trial, the breach had been cured, and no prejudice had accrued to the landlord by virtue of that breach. Accordingly, the trial court should have entered judgment for Entrepreneur at the close of all the evidence on Yasuna's claim for possession based on the forfeiture clause of the lease. The jury verdict requiring forfeiture is therefore vacated.

### III.

■ The second question is the effect of the notices of termination of the lease, served on Entrepreneur, upon the option to purchase contained in the lease agreement. Prior to the commencement of the case, Entrepreneur had taken steps to exercise the option. The complaint requested a declaratory judgment that such steps were ineffective because the option was void. The question of the validity of the option was thus put into issue by the plaintiff, and was a central issue in the case. In its answer to the complaint, Entrepreneur alleged that the option was not void and that it had taken all proper steps to exercise it. The trial court's decision on the first day of trial to exclude defense evidence relating to the option because Entrepreneur had not included a counterclaim in its answer requesting specific performance of the option was erroneous. Plaintiff's case had put the option in issue. Even if it had not, Entrepreneur's designation of its claim relating to the option as a "defense" in its answer rather than as a

counterclaim should not have precluded its consideration. *See* Super.Ct.Civ.R. 8(c) ("When a party has mistakenly designated a ... counterclaim as a defense, the Court ... if justice so requires, shall treat the pleading as if there had been a proper designation."); *Backus v. Veterans Cooperative Housing Association*, 96 A.2d 513, 516 (D.C.1953) (counterclaim erroneously designated as defense in answer will be considered); *see also* Super.Ct.Civ.R. 8(f) ("All pleadings shall be so construed as to do substantial justice.")

■■■■ Although termination of the lease containing the purchase option would extinguish all rights under that option, "it is fundamental that forfeitures of purchase options in leases are not favored." *Summa Corp. v. Richardson, supra*, 93 Nev. at 234, 564 P.2d at 184; *Atlantic Greyhound Corp. v. Smithdeal*, 192 F.2d 453, 458 (4th Cir.1951), *cert. denied*, 343 U.S. 928, 72 S.Ct. 761, 96 L.Ed. 1338 (1952). Unless an option is specifically conditioned on compliance with lease covenants, breach of covenant or default under the lease will not bar an action for specific performance of the option. *Owens Illinois, Inc. v. Lake Shore Land Co.*, 457 F.Supp. 896, 904 (W.D.Pa. 1978) (option in lease treated as entirely separate agreement, and without express language in contract that default shall prevent securing of specific performance of the option, such default shall be no bar), *aff'd*, 610 F.2d 1185 (3d Cir.1979); *Leisure Sports Investment Corp. v. Riverside Enterprises, Inc.*, 7 Mass.App. 489, 492–493, 388 N.E.2d 719, 722 (1979) (court will not read implied condition into lease that lessee must not be in default of any of the lease provisions in order to exercise option).[10] Thus, a default under a lease is not equivalent to default under the separate option contract, nor is it a defense to its exercise, *Owens Illinois, supra*, 457 F.Supp. at 906, and therefore Entrepreneur's use of the premises without a certificate of occupancy has no effect on the enforceability of the option contract absent some action taken by Yasuna based on the breach of the "unlawful purpose" covenant.

■■■■ We have held that by their inaction in the face of knowledge of violation of the lease covenant and their acceptance of rent, the Yasunas waived their right to terminate the lease based on that violation until such time as they afforded their tenant reasonable notice of the breach and an opportunity to cure it. No notice of breach was provided Entrepreneur until January 31, 1977. Breaches of the lease prior to that date did not terminate the lease and therefore subsequent attempts to terminate the lease based on those breaches had no effect upon the purchase option.[11] Moreover, once Entrepreneur exercised its rights under the option contract, on March 1, 1977, any later breaches could have no retroactive effect upon the option. *Summa Corp. v. Richardson, supra*, 93 Nev. at 234–235, 564 P.2d at 185.

■■■■ The remaining question is the effect of the January 31, 1977 notice upon the option. We have held that this notice was insufficient to terminate the lease

10. *See also Cook v. Young*, 269 S.W.2d 457, 460 (Tex.Civ.App.1954); *Giblin v. Sudduth*, 300 S.W.2d 330, 334 (Tex.Civ.App.1957); *Mathews Slate Co. v. New Empire Slate Co.*, 122 F. 972, 981 (C.C.N.Y.1903); *Perry v. Waddelow*, 145 F.Supp. 349, 351 (E.D.Ill.1956).

11. *See, e.g., Summa Corp. v. Richardson, supra*, 93 Nev. at 235–236, 564 P.2d at 185 (breaches of lease that are waived do not impair option contract); *Mack v. Dailey*, 67 Vt. 90, 91, 30 A. 686, 687 (1894) (same); *Crowell v. Braly*, 169 Cal. App.2d 352, 354, 337 P.2d 211, 213 (1959) (since default under lease does not of itself work a forfeiture, waived defaults do not prevent exercise of option); *Perry v. Waddelow, supra* note 10, 145 F.Supp. at 350–51 (waived breach negates right to declare a forfeiture and therefore estops lessor from asserting breach as ground for refusing to honor option); *Mathews Slate Co. v. New Empire Slate Co., supra* note 10, 122 F. at 981 (waived breach is no defense to specific performance of option); *Larsen v. Sjogren*, 67 Wyo. 447, 464–465, 226 P.2d 177, 182–83 (1951) (same); *Cameron v. Scherf*, 75 S.D. 223, 228–229, 62 N.W.2d 884, 887 (1954) (failure to exercise option to declare lease void for breach of covenant requires finding that option is effective).

since it did not specify the nature of the breach complained of and therefore did not provide the tenant with a reasonable opportunity to cure its default. Since the notice was ineffective to work a forfeiture of the lease, it did not extinguish the option. *See Schlegel v. Hansen, supra* note 9, 98 Idaho at 616, 570 P.2d at 294 (termination of lease by reentry is ineffective absent compliance with notice requirement and right to purchase option therefore not abrogated); *Smith v. Hickey,* 45 Or.App. 139, 142–143, 607 P.2d 787, 789 (1980) (option not abrogated by notice of termination notwithstanding fact that notice was given prior to exercise of option, where notice was based on prior breaches that landlord had waived); *Foley v. Cowan,* 80 Cal.App.2d 70, 73–74, 181 P.2d 410, 412 (1947) (absent notice to tenant of default, lease provision for immediate reentry upon breach of covenant did not justify refusal to honor option based on prior breaches). *Compare Williams v. Behrend,* 55 A.2d 138, 139 (D.C. 1947) (where violations of lease covenant continue even after adequate notice calling violations of covenant to tenant's attention, tenancy may be terminated). Moreover, the option was exercised within the statutory 30-day grace period set forth in the notice, and options exercised within such grace periods have been held effective. *See Group Property, Inc. v. Bruce,* 113 Cal.App.2d 549, 556–557, 248 P.2d 761, 766 (1952). In addition, at the time the suit for possession was brought, the breach was in the process of being cured, and options exercised while a tenant is technically in breach of a lease covenant where the breach is subsequently remedied have been held effective. *See Vozar v. Francis,* 579 P.2d 1056, 1060 (Alas.1978). Finally, although the January 31 notice purported to be a notice of termination, effective March 1, 1977, Yasuna subsequently accepted rent for February and March, and did not file any action for possession based on the failure to vacate on March 1. A second and then a third notice of default were given later in March, following exercise of the option. Several courts have held that ac-ceptance of rent following notice of breach and failure to follow through on the terms of the notice constitute a waiver and permit the exercise of the revived purchase option. *Barber v. Raichart,* 207 Neb. 278, 279–280, 298 N.W.2d 359, 360 (1980); *Allen v. Bates,* 498 S.W.2d 120, 122 (Ky.1973); *Bridges v. Jeffrey,* 437 S.W.2d 732, 733 (Ky.1968).

In sum, specific performance of the option contract was warranted in this case. *See Randall v. Erdman,* 194 Neb. 390, 396–398, 231 N.W.2d 689, 693 (1975). If on notice of the option, Marshall Yasuna purchased the property subject to the rights of Entrepreneur, including the right to specific performance. 2 M. FRIEDMAN, *supra* § 15.501, at 800 & n. 11. Yasuna, who collected rent under the terms of the lease from Entrepreneur through his agent, Muriel Yasuna, is deemed to have knowledge of the terms of this recorded lease, including the option. *Texas Co. v. Aycock,* 190 Tenn. 16, 24–26, 227 S.W.2d 41, 45 (1950). The purchase option would have been extinguished, however, had Muriel Yasuna informed Bachman of Marshall Yasuna's purchase offer and afforded him his contractual right of first refusal under the lease. On this point, Muriel Yasuna's testimony is consistent with Bachman's—that although she requested that Bachman exercise his purchase option in late 1974 or early 1975, she never specifically informed him of Marshall Yasuna's offer. If Bachman was never so informed, he was not granted a right of first refusal and therefore he properly exercised his purchase option in March of 1977. Muriel Yasuna repeatedly stated at trial, however, that she had granted Bachman his right of first refusal. The trial court restricted evidence on the issue of the option and right of first refusal contracts—in fact, it is not even clear, based on this record, that an actual sale of the property transpired, and if it did, whether the purchase price was $150,000 or $123,000—and none of these questions were resolved by the jury. (Breach of the right of first refusal contract was not directly at issue in this litigation since

Muriel Yasuna is not a party.) We therefore remand this question for additional factfinding by the trial court.

Accordingly, the case is reversed and remanded to the trial court for the entry of an order dismissing appellee's claim for possession, and for additional factfinding on the question of whether Entrepreneur was granted a right of first refusal prior to the sale of the property to Marshall Yasuna. If the trial court determines that Entrepreneur was not offered its right of first refusal, it shall enter an order directing specific performance of the purchase option.

*So ordered.*